UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DARLENE TOMPKINS,           )
                            )
        Plaintiff           )
                            )
v.                          )   No. 1:13-cv-73-GZS
                            )
CAROLYN W. COLVIN,          )
Acting Commissioner of Social Security, )
                            )
        Defendant           )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work as a shoe stitcher. The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) made errors in determining her mental residual functional capacity ("RFC") and (ii) improperly rejected the views of a treating physician and nurse practitioner, Dr. Fadi Ajine and Marci Lowe, A.R.N.P. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 5-8.[2] As part of the second point of error, the plaintiff argues that the administrative law judge erred in determining her fibromyalgia-related restrictions based on the raw medical evidence. I agree that, having deemed the plaintiff's fibromyalgia and mental impairments severe, the administrative law judge

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2013, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] At oral argument, the plaintiff's counsel withdrew two additional points of error pertaining to the application of Social Security Ruling 82-62 and problems with the physical RFC (sections II(a) and II(b) of the Statement of Errors).

1

impermissibly determined resulting limitations based on the raw medical evidence. As a result, her RFC determination is unsupported by substantial evidence. On that basis, I recommend that the court reverse the decision and remand this case for further proceedings.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2013, Finding 1, Record at 12; that she had severe impairments of degenerative disc disease, right shoulder tendinitis and condition status-post surgery, degenerative joint disease of the left knee, diabetes mellitus, obesity, fibromyalgia, congenital pes planus, bipolar disorder, depression, anxiety, personality disorder NOS [not otherwise specified], and post-traumatic stress disorder, Finding 3, *id*. at 13; that she retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that she could occasionally climb ladders, ropes, and scaffolds and crawl, could frequently climb ramps and stairs, balance, stoop, kneel, and crouch, should not engage in any overheard work with her right upper extremity, should work where there was only occasional simple decision-making or judgment required and where there were no complicated or detailed tasks, and should be limited to occasional contact with supervisors, Finding 5, *id*. at 15; that she was capable of performing past relevant work as a laborer in a shoe factory, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 24; and that she, therefore, was not disabled from April 2, 2008, her alleged onset date of disability, through the date of the decision, March 26, 2012, Finding 7, *id*. at 25. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of

the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); SSR 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Rejection of Ajine/Lowe RFC Opinion

On December 22, 2011, the plaintiff was seen on referral from B. Thom Hieronymus, FNP, her treating nurse practitioner, by a practitioner or practitioners at Inland Rheumatology who diagnosed her with fibromyalgia. *See* Record at 1108, 1118. On December 30, 2011, nurse practitioner Lowe completed a fibromyalgia RFC questionnaire, which was countersigned by Dr. Ajine (who did not identify himself as a doctor). *See id*. at 1108-12.

Lowe indicated, *inter alia*, that the plaintiff's experience of pain or other symptoms was severe enough to interfere frequently with her attention and concentration to perform even simple work tasks, that she could sit for only two hours at a time, and that she required a job that permitted shifting positions at will from sitting, standing, or walking. *See id*. at 1109-10. She noted that a follow-up was scheduled for February 2, 2012, *see id*. at 1108, and the notes of that follow-up are of record, *see id*. at 1117-19.[3]

The administrative law judge found that the plaintiff had a severe impairment of fibromyalgia, *see* Finding 3, *id*. at 13, but gave little weight to the Lowe opinion, stating:

> The [plaintiff] began treating with Marci Lowe near the end of 2011. The form is also signed by Paul [sic] Ajine, and it is unclear whether this individual is an acceptable medical source, or whether he ever treated the [plaintiff]; however, the undersigned has resolved this issue in favor of the [plaintiff], and will assume that Mr. Ajine is an acceptable medical source. Even making this assumption, this opinion is not supported by the weight of the longitudinal medical evidence outlined above. Ms. Lowe opined that the [plaintiff] suffers from constant, moderate to severe pain, and this pain frequently interferes with her ability to maintain attention and concentration for even simple work tasks, and limits her to low stress work. The [plaintiff's] current, continued work for 5 hour shifts at Dunkin Donuts[] brings this statement into doubt; if the [plaintiff] were frequently limited, she should not be able to maintain her current employment, which often requires 5-hour shifts. Ms. Lowe also opined that the [plaintiff] required a "sit/stand option" which is not warranted by the weight of the evidence outlined above, including generally mild imaging scans and physical examinations that note some tenderness, but no need for a sit/stand option. She also claimed that the [plaintiff] could never engage in any postural activities other than twisting, and could only rarely move her head and neck (including only rarely being able to hold her head and neck in a static position). This would be extremely limiting, and is not supported by the physical examinations outlined above, or the [plaintiff's] work history outlined later in this opinion. These extreme limitations bring the rest of this opinion into question, including the [plaintiff's] alleged need for unscheduled breaks and regular absences from work and, combined with the

---

[3] The record contains no progress notes pertaining to the plaintiff's December 22, 2011, visit to Inland Rheumatology. At oral argument, I questioned whether those notes had been omitted solely from the court's copy of the record or had never been part of the record. By letter dated December 17, 2013, the plaintiff's counsel confirmed that Inland Rheumatology did not provide his office with requested notes of the December 22, 2011, visit, as a result of which his office did not forward those notes to the commissioner. Those notes, hence, were not part of the record before the administrative law judge.

4

> fact that the [plaintiff] had only met with these providers once in December 2011, limits the persuasiveness of this opinion.

*Id*. at 19-20 (citation omitted).

The plaintiff assails the administrative law judge's rejection of the Lowe/Ajine opinion on two bases: that, (i) having found a severe fibromyalgia impairment, she was not free to reject the uncontradicted Lowe/Ajine opinion, a proposition for which the plaintiff cites *Johnson v. Astrue*, 597 F.3d 409, 412 (1st Cir. 2009), *Nguyen v. Chater*, 172 F.3d 31, 34 (1st Cir. 1999), and *Soto-Cedeño v. Astrue*, 380 Fed. Appx. 1 (1st Cir. 2010), and, (ii) in any event, she improperly rejected the Lowe/Ajine opinion, which she accepted was that of a treating source, on the basis of a separate, irrelevant analysis of the plaintiff's credibility. *See* Statement of Errors at 7-8.

The commissioner disputes that the administrative law judge was required to accept the Lowe/Ajine opinion, arguing that this case in analogous to *Nelson v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00032-JAW, 2010 WL 5452126 (D. Me. Dec. 28, 2010) (rec. dec., *aff'd* Jan. 19, 2011), in which this court rejected a similar argument regarding asserted error in assessing limitations stemming from fibromyalgia. *See* Opposition at 7-8. At oral argument, her counsel further contended that the administrative law judge properly rejected the opinion on the bases that (i) there was no indication that it constituted a "treating source" opinion, (ii) in any event, it was facially inconsistent with other evidence of record, in particular evidence that the plaintiff had been able to successfully perform work-related functions at Dunkin Donuts that Lowe and Dr. Ajine deemed her incapable of performing, and (iii) because subjective complaints are central to the assessment of fibromyalgia, the credibility of the plaintiff's allegations was central to analysis of the persuasiveness of the Lowe/Ajine opinion. *See also id*.

The commissioner is correct that the administrative law judge was not obligated to accept the Lowe/Ajine opinion and that, even if it did qualify as a treating source opinion, she permissibly rejected it.

As a threshold matter, as counsel for the commissioner noted at oral argument, the administrative law judge never explicitly found that Dr. Ajine was a treating source. Rather, she resolved doubts in favor of finding him an acceptable medical source. *See* Record at 19-20 ("The form is also signed by Paul [sic] Ajine, and it is unclear whether this individual is an acceptable medical source, or whether he ever treated the [plaintiff]; however, the undersigned has resolved this issue in favor of the [plaintiff], and will assume that Mr. Ajine is an acceptable medical source."). Only acceptable medical sources, which include licensed physicians, can establish the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). A treating source is defined as "[a claimant's] own physician, psychologist, or other acceptable medical source who provides [him or her], or has provided [him or her], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Id*. §§ 404.1502, 416.902. That Dr. Ajine may have treated the plaintiff once does not render him a "treating source," even accepting, as the plaintiff's counsel asserted at oral argument, that many specialists only see a patient once. *See, e.g., Bowie v. Colvin*, No. 2:12-cv-205-DBH, 2013 WL 1912913, at *7 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* May 7, 2013) ("A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons.") (citation and internal quotation marks omitted).

However, even assuming *arguendo* that Dr. Ajine was, or should have been found to be, a treating source, the administrative law judge properly rejected the Lowe/Ajine opinion.

6

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the question of a claimant's RFC is among issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no "special significance" and cannot be assigned controlling weight. *Id.* §§ 404.1527(d)(2)-(3), 416.927(d)(2)-(3); Social Security Ruling 96–2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–2p"), at 112.

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[4] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must

---

[4] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

7

explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

In arguing that the administrative law judge was obligated to adopt the Lowe/Ajine opinion, the plaintiff reads too much into *Johnson*, *Nguyen*, and *Soto-Cedeño*. In each of those cases, the First Circuit held that an administrative law judge improperly rejected a treating source opinion not because it was the sole RFC opinion of record as to the impairment at issue, but because the administrative law judge failed to supply supportable reasons for rejecting it. *See Soto-Cedeño*, 380 Fed. Appx. at 4 ("[T]he ALJ [administrative law judge] did not give supportable reasons for rejecting Dr. Rivera's opinion as to Soto's ability to function in the workplace for the time frame the doctor had evaluated. We therefore vacate the district court's judgment insofar as it upheld this portion of the ALJ's decision[.]"); *Johnson*, 597 F.3d at 411 ("In concluding that claimant could perform light to sedentary work, the ALJ gave 'little weight' to Dr. Ali's RFC assessment, and she provided several unpersuasive reasons for this decision."); *Nguyen*, 172 F.3d at 35 ("The ALJ rejected the opinion [of the treating source] as inconsistent with 'actual findings made on exam and the degree of treatment needed,' the lack of 'recent treatment,' and some unspecified aspect of the entire record. This reasoning lacks proper support in the record.") (footnote omitted).

The administrative law judge, in this case, did not fail to supply the requisite good reasons. The plaintiff cites *Johnson* for the proposition that neither a lack of findings on physical examination nor a negative credibility finding based in part on work history is a valid reason to discount fibromyalgia symptoms. *See* Statement of Errors at 8. However, *Johnson* is distinguishable.

In *Johnson*, the administrative law judge discredited the treating physician's opinion on the basis that the assessed limitations necessarily were predicated on the claimant's subjective allegations, given that the doctor's examinations were, with the exception of the presence of tender points, relatively benign. *See Johnson*, 597 F.3d at 412. The First Circuit held that, because a plaintiff's subjective complaints are an essential diagnostic tool in fibromyalgia cases and trigger points are the only objective signs of fibromyalgia, this did not constitute a good reason to discredit the opinion. *See id*. It went on to observe, "[O]nce the ALJ accepted the diagnosis of fibromyalgia, she also had no choice but to conclude that the claimant suffered from the symptoms usually associated with such condition, unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms." *Id*. at 414 (citation, internal punctuation, and emphasis omitted). It noted, "The primary symptom of fibromyalgia, of course, is chronic widespread pain[.]" *Id*.

As counsel for the commissioner contended at oral argument, *Johnson* does not stand for the proposition that an administrative law judge who finds a severe impairment of fibromyalgia must accept a claimant's allegations regarding the extent of his or her limitations at face value. *See, e.g., Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *8 (D. Me. Jan. 17, 2011) (rec. dec., *aff'd* Feb. 22, 2011) (observing, post-*Johnson*, that administrative law judge properly pointed to substantial evidence that, as of claimant's date last insured, her fibromyalgia did not "impose disabling (or, for that matter, chronic, widespread) pain[,]" including medical evidence and the claimant's own statements that symptoms of joint pain and weakness were not persistent, and medications appeared to help).

In this case, unlike in *Johnson*, the administrative law judge's reasons for rejecting the Lowe/Ajine RFC opinion were premised on specific findings rather than a misunderstanding of

the nature of fibromyalgia. The administrative law judge observed that the plaintiff's "pain complaints appear[ed] to be mostly limited to treatment for [separately diagnosed] specific conditions, most notably her shoulder, knee, and back[,]" and that she had been working several days a week for up to five hours a day. Record at 19. She reasonably concluded that these facts called into serious question the debilitating restrictions assessed by Lowe, who had treated the plaintiff only once at the time she rendered her opinion. *See id.* at 20. In so doing, contrary to the plaintiff's counsel's argument, she permissibly considered two of the enumerated factors for assessment of a medical opinion pursuant to 20 C.F.R. §§ 404.1527 and 416.927 – the nature of the examining or treating relationship and the consistency of the opinion with other evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2) & (4); 416.927(c)(1)-(2) & (4).

The administrative law judge, therefore, did not err in rejecting the Lowe/Ajine opinion.

Nonetheless, as the plaintiff notes, *see* Statement of Errors at 7, in rejecting the Lowe/Ajine opinion, the administrative law judge impermissibly determined restrictions stemming from fibromyalgia based on her own assessment of the raw medical evidence. Although an administrative law judge is not precluded from "rendering commonsense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record." *Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990).

The administrative law judge accorded only "some weight" to the RFC opinions of agency nonexamining consultants Donald Trumbull, M.D., and Mary Lanette Rees, M.D., whose opinions predated the plaintiff's fibromyalgia diagnosis, rejecting their conclusion that the plaintiff was capable of performing light work. *See* Record at 20, 769-76, 879. The commissioner does not argue that the assessment of the plaintiff's RFC with respect to

fibromyalgia was a matter of commonsense judgment. *See* Opposition at 7-8.[5] Indeed, as the plaintiff's counsel noted at oral argument, the administrative law judge appears to have assessed *no* restrictions stemming from the plaintiff's severe impairment of fibromyalgia. The only difference between the RFC that she assessed and those of Drs. Trumbull and Rees is that, whereas they deemed the plaintiff capable of meeting the exertional demands of light work, she found her capable of meeting the exertional demands of sedentary work. *Compare* Finding 5, Record at 15 *with id*. at 770, 879; *see also* 20 C.F.R. §§ 404.1567(a)-(b), 416.967(a)-(b). However, she attributed that modification to the plaintiff's knee impairment, explaining: "[G]iving the [plaintiff] the benefit of the doubt with regard to her knee pain, the undersigned finds that *this impairment* limits her to sedentary work, allowing her to sit for 6 hours out of an 8-hour workday." Record at 18 (emphasis added).

The administrative law judge's RFC determination, accordingly, is unsupported by substantial evidence, warranting reversal and remand. *See, e.g., Huston v. Colvin*, No. 2:12-cv-00282-JAW, 2013 WL 3816615, at *4 (D. Me. July 19, 2013) (holding reversal and remand warranted when administrative law judge found claimant's fibromyalgia severe but failed to account for any limitations flowing from it, relying on agency RFC opinions that predated

---

[5] The commissioner cites *Nelson* for the proposition that there was no error in the administrative law judge's physical RFC finding with respect to fibromyalgia. *See* Opposition at 7-8. Her reliance is misplaced. In *Nelson*, this court rejected a claimant's argument that an administrative law judge had failed to find substantial limitations secondary to a severe impairment of fibromyalgia, as purportedly required by *Johnson*. The *Nelson* court noted that, unlike in *Johnson*, there was no competing treating source RFC assessment, and the administrative law judge had relied on RFC assessments by three agency consultants who had determined the limiting effects of the claimant's experience of diffuse pain, although two of those consultants apparently had done so before the claimant received a diagnosis of fibromyalgia from a treating source. *See Nelson*, 2010 WL 5452126, at *4-*5. The commissioner reasons that here, as in *Nelson*, there is no treating source RFC opinion because (i) Lowe and Dr. Ajine completed the RFC form after meeting with the plaintiff only once, (ii) *Johnson* does not mandate that a provider who has seen a claimant only once, even for fibromyalgia, be deemed a treating source, and (iii) the administrative law judge properly discounted their opinion on these grounds. *See* Opposition at 8. However, unlike in *Nelson*, the two agency consultants whose RFC opinions are of record did not purport to take into account either diagnosed fibromyalgia or symptoms of fibromyalgia. *See* Record at 769-76, 879.

fibromyalgia diagnosis and did not take into account the full panoply of fibromyalgia symptoms).

### B. Errors in Determining Mental RFC

The plaintiff further notes that the administrative law judge found that she had a number of severe mental impairments, rejecting the findings of two agency nonexamining consultants, Brian Stahl, Ph.D., and Peter G. Allen, Ph.D., that her mental impairments were nonsevere, but then went on to reject the only other expert RFC opinion of record bearing on mental impairments, that of Dr. Ajine and Lowe. *See* Statement of Errors at 5-7. She argues that the administrative law judge impermissibly determined her mental RFC from the raw medical evidence. *See id.*

The plaintiff correctly characterizes this as error. *See id*. at 5-6. As she notes, *see id.* at 5, neither Dr. Stahl nor Dr. Allen had the benefit of review of the full record in assessing her mental impairments as nonsevere. For precisely that reason, the administrative law judge gave their opinions little weight. *See* Record at 23 ("While the undersigned concurs with the State agency consultants' ultimate determination that the claimant is not disabled, evidence obtained at the hearing level, as well as the claimant's subjective complaints, establish that she suffers from a severe, medically determinable impairment.").

As was the case with the plaintiff's fibromyalgia, the administrative law judge assessed her mental limitations based on the raw medical evidence. The commissioner does not argue that this assessment was a matter of commonsense judgment. *See* Opposition at 5-7; *Gordils,* 921 F.2d at 329. The administrative law judge's mental RFC determination, like her physical RFC determination, accordingly is unsupported by substantial evidence.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of December, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge